IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL ANTHONY COMPTON,       )
                               )
        Petitioner,             )
                               )
        v.                      )        1:11CR365-1
                               )        1:13CV1156
UNITED STATES OF AMERICA,      )
                               )
        Respondent.             )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 46) ("Section 2255 Motion").[1] For the reasons that follow, the Court should deny Petitioner's Section 2255 Motion.

INTRODUCTION

This Court (per United States District Judge Thomas D. Schroeder) previously entered a Judgment against Petitioner imposing, inter alia, a prison term of 110 months, upon his guilty plea to possession of ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). (Docket Entry 30; see also Docket Entry 1 (Indictment); Docket Entry 21 (Plea Agt.); Docket Entry dated Feb. 17, 2012 (documenting guilty plea); Docket Entry dated May 24, 2012

---

[1] Parenthetical citations refer to Petitioner's criminal case.

(documenting sentencing); Docket Entry 38 (Plea Hrg. Tr.); Docket Entry 39 (Sent'g Hrg. Tr.).) The United States Court of Appeals for the Fourth Circuit affirmed and the United States Supreme Court denied certiorari. United States v. Compton, 489 F. App'x 706 (4th Cir. 2012), cert. denied, ___ U.S. ___, 133 S. Ct. 1300 (2013). Petitioner thereafter timely filed his Section 2255 Motion (Docket Entry 46), along with a Memorandum of Law in Support (Docket Entry 47). The United States has responded (Docket Entry 50) and Petitioner has replied (Docket Entry 53).

## DISCUSSION

Petitioner's Section 2255 Motion asserts these two claims:

1) "Petitioner's right to Confrontation under the 6th Amend., was violated when [the] Court allowed officers [sic] hearsay testimony" (Docket Entry 46, ¶ 12.A. ("Ground One"); see also id. ("Petitioners [sic] trial cousnel [sic] provided ineffectibe [sic] representation during the Rule 11 Allocution process and sentencing proceedings, whereas the district court without objection from cousnel [sic] permitted police officers to give hearsay testimony, thus violating Petitioner's right to confrontation under 6th Amend., Confrontation Clause")); and

2) "Petitioner was denied effective assisatnce [sic] of counsel while under direct appeal review and on writ of Cert." (id., ¶ 12.B. ("Ground Two"); see also id. ("Appellate counsel called his client guilty on appeal and on cert. review in both

2

briefs, and missed critical proedural [sic] violations of the Federal Rules of Criminal Procedure, that could have been raised, de novo, providing ineffective representation")).

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To make out an ineffective assistance claim, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to [take action if] . . . it would have been futile for counsel to have done so . . . .").

<u>Ground One – Hearsay Testimony during Sentencing Hearing</u>

As the Court (per Judge Schroeder) observed during Petitioner's sentencing hearing, "paragraph 14 of [his] [P]resentence [R]eport . . . [noted that] under [U.S.S.G. §] 2K2.1 . . . the base offense level [for possession of ammunition by a felon] is 14 . . . ." (Docket Entry 39 at 57.) Pursuant to

3

U.S.S.G. § 2K2.1(b)(6), the Presentence Report added "four levels for possessing firearms and ammunition in connection with another felony offense." (Id.) "[T]hose felony offenses [we]re kidnapping under North Carolina General Statute 14-39 . . .; first degree burglary under North Carolina General Statute 14-51 . . .; and robbery with firearms or [] dangerous weapons under North Carolina General Statute 14-87 . . . ." (Id. at 58.) The Presentence Report then applied the "cross-reference [from] [U.S.S.G. §] 2K2.1[(c)(1)], . . . and under [U.S.S.G. §] 2X1.1 [looked] to [U.S.S.G. §] 2A4.1 [pertaining to kidnapping]. The base offense level under [U.S.S.G. § 2A4.1(a)] is 32, and [that figure was] enhanced two levels under [U.S.S.G. § 2A4.1(b)(3)] because a dangerous weapon was used . . . ." (Id. at 59.) After "three points reduc[tion] for acceptance [of responsibility under U.S.S.G. § 3E1.1], the total offense level [was] 31." (Id.)

At Petitioner's sentencing hearing, consistent with his position paper filed in advance of sentencing, Petitioner (through his counsel) "object[ed] to the . . . four-level enhancement as well as the cross-reference . . . [based on] a connection between the arms and ammunition in the vehicle [and] any type of alleged offense." (Id. at 4; see also id. at 5 (objecting to the "factual portion of the [P]resentence [R]eport" except as to "the police encountering [Petitioner] at the vehicle" and asserting that "the firearm and ammunition that was charged to [Petitioner] had no

4

connection with any particular alleged offenses").) The United States then called two witnesses, Corporal Eric League and Lieutenant Robert Elliot of the Guilford County Sheriff's Office (both of whom Petitioner's counsel cross-examined). (See id. at 5-37.) Petitioner declined to present any evidence. (Id. at 37.)

The Court thereafter overruled Petitioner's objection(s) and adopted the guideline calculations proposed in the Presentence Report. (Id. at 57-60.) In so doing, the Court expressly found:

1) that Petitioner "clearly possessed the ammunition . . . in the vehicle, [which] included the shotgun shells under the seat with him, which [wa]s right next to the Latex gloves which were found on the floor" (id. at 57);

2) "by a preponderance of the evidence that [Petitioner] possessed the ammunition in connection with another felony offense through the ammunition in the firearm beneath him as well as the firearm itself since it was right below the seat where he was sitting" (id.); and

3) that "[t]he possession of the ammunition and firearm . . . facilitated the [other felony] offense[s] . . . [and,] at a minimum, possession of the firearm and ammunition had the potential for facilitating the felony offenses that occurred in the mobile home [near where Petitioner was found in the vehicle]" (id. at 58).

5

In connection with the foregoing ultimate findings of fact, the Court also "ma[d]e the following [subordinate factual] findings by a preponderance of the evidence" (id. at 53):

> That Corporal Eric League and Lieutenant Elliot's testimony is credible, and I find the facts as they have set forth in their testimony.
>
> That on May the 9th, 2011, Corporal League responded to a 9-1-1 call that had indicated a home invasion at 18 Black Stallion Court.
>
> That as [Corporal League] arrived, he observed [Petitioner] sitting in the front passenger seat of a black Impala.
>
> The 9-1-1 call had indicated that four to five men had kicked the door into a mobile home and that Corporal League arrived within less than four minutes.
>
> And that a Mr. Martinez was in the residence, had his hands duct taped together. Deputy Martin and Corporal League then cleared the house, that is, they checked the house for further invaders, and the house, also known as a mobile home, had been ransacked.
>
> That there were three people in the master bedroom closet with -- the door had been closed. They were duct taped around their hands and mouths and that there was a chair under the knob of the closet and a mattress leaning up against it in order to keep them in the closet.
>
> That the individuals reported to law enforcement after they were freed that people broke into the home, pointed guns at them. A two-year-old child was bound with hands bound, ankles were bound, and they were duct taped around their arms. The wife was also duct taped and put into a pantry.
>
> That the invaders put guns to the two male residents and demanded money and cell phones. $3,080 was reported taken from the robbery. A search of [Petitioner] discovered $3,000 on his person.

6

> Under the passenger seat underneath [Petitioner] was a loaded shotgun, and in the passenger's seat with him was a pistol magazine and a round.
>
> The cash found on [Petitioner] was found in his front right pocket.
>
> There's substantial evidence that the house was broken into. The front doorjamb was destroyed. A footprint was on the door.
>
> Found on the ground just by [Petitioner] were Latex gloves. He was seen leaning forward slightly in the automobile when law enforcement arrived.
>
> Following [Petitioner's] arrest, he was Mirandized and elected not to say anything. At the jail, however, his phone call was recorded. During one of his phone calls in the jail, he made the statements that are set forth in Government's Exhibit No. 1. My recollection is they're to the effect that they shouldn't have been in there that long in the house. I take it as referring to the house, and that's a reasonable interpretation; that they had been there 10 minutes, and that was too long. And he uses the word "we" which is an indication that he was involved in the scheme.
>
> Also Mr. Martinez was asked -- at the beginning of the confrontation when law enforcement arrived, he was asked by Corporal League whether [Petitioner] was one of the "bad guys," and -- the phrase used by Officer League, and Mr. Martinez said yes.

(Id. at 53-55; see also id. at 56 ("[I]t's reasonable to conclude then that the way in which the individuals were kidnapped and forced into the closet was through some threat of harm through the use of a firearm -- one or more firearms in this case.").)

The Court recognized that "some of [the sentencing hearing evidence] [wa]s based on hearsay . . . [and] that the information as to . . . the actual use [of firearms] comes through what Deputy

7

Martin learned during the interview [of the victims] that was then reported to Corporal League, and so there may be another layer of hearsay involved, but [the Court found such evidence] sufficiently reliable for [the Court] to rely upon." (Id. at 56.) In so doing, the Court observed that it was "not bound by the hearsay rules in sentencing proceedings." (Id.) In addition, the Court explicitly "considered whether or not Crawford [v. Washington, 541 U.S. 35 (2004),] would be a problem here as well, and [determined that it was] not bound by Crawford in terms of confrontation." (Id.)

Ground One of Petitioner's Section 2255 Motion asserts that "[his] right to Confrontation under the 6th Amend[ment] was violated when [the] Court allowed [the above-referenced] hearsay testimony." (Docket Entry 46, ¶ 12.A.) Petitioner's Memorandum of Law in Support elaborates that, "[f]or [this] [C]ourt to believe it [wa]s not bound by Crawford is to stray from its polestar dictates of what the U.S. Supreme Court constitutionally requires [the Court] to do." (Docket Entry 47 at 3.) Petitioner further has complained that "[n]owhere in the 6th Amendment to the U.S. Constitution does it stipulate that [a] district court is not bound by hearsay rules in sentencing proceedings." (Id. at 3-4 (internal ellipses and quotation marks omitted); see also id. at 4 ("Simply put, [Petitioner] was entitled to face his accusers, and not witnesses speaking on hearsay.").) Relatedly, Petitioner has maintained that, because his counsel did not specifically mention

8

Crawford as part of any objections during the sentencing hearing, "[e]ither [his] counsel was oblivious to the Crawford standard of review, or he was simply inept, ill-prepared, and/or had not not [sic] one iota of an ideal [sic] or understanding of the Federal Rules of [C]riminal [P]rocedure." (Id. at 6; see also Docket Entry 46, ¶ 12.A. (stating that the Court "without objection from cousnel [sic] permitted [the] officers to give hearsay testimony, thus violating Petitioner's right to confrontation" (emphasis added)).)

Controlling authority forecloses Petitioner's Confrontation Clause claim. See United States v. Powell, 650 F.3d 388, 391-93 (4th Cir. 2011) ("[The defendant's] Confrontation Clause argument ignores the fundamental differences between trial and sentencing. . . . [T]he sentencing judge must have recourse to a much broader array of information than we allow the trier of fact to consider in determining a defendant's guilt. . . . This widened evidentiary universe at sentencing has always included reliable hearsay of many varieties, the Confrontation Clause notwithstanding. . . . Recent Confrontation Clause decisions do not require us to reconsider this settled distinction between trial evidence and sentencing evidence in the hearsay context. . . . [N]othing in [Crawford or its progeny] states that the confrontation right applies at sentencing; indeed, they suggest precisely the opposite. . . . [I]n holding that the Confrontation Clause does not apply at sentencing, we join every other federal circuit court that hears criminal appeals.").

9

Further, because any objection at sentencing based on the Confrontation Clause would have failed, Petitioner cannot predicate an ineffective assistance claim on any failure by his counsel to proffer any such objection. See Oken, 220 F.3d at 269.[2]

As quoted above, Ground One of Petitioner's Section 2255 Motion also makes reference to "ineffectibe [sic] representation during the Rule 11 Allocution" (Docket Entry 46, ¶ 12.A.), but without identifying the basis for such a claim (see id.). The section of Petitioner's Memorandum of Law in Support devoted to Ground One does not provide any comprehensible clarification on point (see Docket Entry 47 at 1-32); however, it does include a quotation from an attached affidavit, wherein Petitioner averred:

---

[2] Additionally, as the United States noted in its Response, "Petitioner is simply mistaken in his assertion that [his] counsel did not object to the admission of hearsay testimony." (Docket Entry 50 at 5 (citing Docket Entry 39 at 8, 14, 16).) Nor has Petitioner developed any meaningful challenge to the Court's finding that the hearsay testimony considered at sentencing qualified as sufficiently reliable. (See Docket Entry 46, ¶ 12.A.; Docket Entry 47 at 1-32; Docket Entry 53 at 1-4.) As a result, the Court should deny any such claim as "vague, conclusory, speculative, and unsupported," Cabrera v. United States, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, C.J.); see also United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (internal quotation marks omitted)). To the extent Petitioner "contends categorically that without cross-examination evidence can never be reliable enough for use at sentencing[,] . . . accepted sentencing practices prove otherwise. . . . A categorical position that hearsay is unreliable as a matter of due process would also run headlong into precedent." Powell, 650 F.3d at 394 (citing United States v. Terry, 916 F.2d 157, 160-61 (4th Cir. 1990)).

10

"'I signed the plea agreement because my lawyer said that I was looking at 15 to 21 months and by the time I would be sentenced it would be time served, or worse [sic] case scenario I'd probably do six more months.'" (Id. at 22 (quoting id., Ex. D, ¶ 4).)

To the extent that averment represents a claim that Petitioner did not knowingly plead guilty (due to ineffective assistance of counsel), said claim fails as a matter of law, because Petitioner has not identified extraordinary circumstances that would permit the Court to ignore his affirmation under oath at his plea hearing that he understood:  1) he faced imprisonment of up to ten years (see Docket Entry 38 at 11); 2) the Court would determine his sentence after considering the Presentence Report and the Sentencing Guidelines (see id. at 12-13); and 3) "the sentencing guideline range that the Court ultimately [would] choose[] for [his] case and the sentence the Court [would] impose[] at the time of [his] sentencing may be different from an estimate of any of those that [his] attorney, or anybody else, may have given [him]" (id. at 13).  See United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . .   Thus, in the absence of extraordinary circumstances, . . . a district court should, without holding an

11

evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").[3]

The Ground One section of Petitioner's Memorandum of Law in Support also appears to seek relief because "a separate factual basis document was filed by the government's counsel, which [according to Petitioner] would lead to a Fatico proceedings [sic]." (Docket Entry 47 at 7 (citing United States v. Fatico, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979)); see also Docket Entry 20 (Factual Basis).) The Fatico footnote cited by Petitioner "states that an evidentiary hearing is sometimes a reliable way to resolve disputed issues." United States v. Jackson, No. 97-4787, 155 F.3d 562 (table), 1998 WL 454084, at *2 (4th Cir. July 28, 1998) (unpublished). Even if Fatico recognized some sort of right under federal law or the United States Constitution to an evidentiary hearing regarding disputed matters (and this Court chose to follow

---

[3] Both Petitioner's Plea Agreement and the transcript of his Plea Hearing make clear that Petitioner knowingly pleaded guilty to possessing ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). (See Docket Entries 21, 38.) The agreement by the United States to and the ultimate dismissal by the Court of that part of the Indictment that referred to his possession of a firearm (see Docket Entry 21, ¶ 5.b.; Docket Entry 38 at 7; Docket Entry 39 at 72) did not (as Petitioner suggests) mean that "the 922(g)(1) count was dismissed, . . . [requiring] an owed explanation [sic] by [this] [C]ourt as to . . . [how Petitioner was] sentenced to a Federal Criminal violation" (Docket Entry 47 at 31). Indeed, Petitioner even acknowledged under oath at the time of his guilty plea that, "if [the Court] dismiss[ed] the [I]ndictment as it respects the shotgun, [the Court] c[ould] nevertheless consider possession of the shotgun, if it's shown at the time of [his] sentencing, for purposes of sentencing[.]" (Docket Entry 38 at 9.)

12

Fatico in that regard), Petitioner has not shown circumstances that would establish a violation of such a right.

At his plea hearing, Petitioner swore that he had read the Factual Basis and that he did not object to it. (Docket Entry 38 at 19.)[4] Only after determining that no dispute existed about the Factual Basis, did the Court find that Petitioner's "plea of guilty [wa]s supported by an independent basis in fact that contains each of the essential elements of the offense." (Id.) Further, as detailed above, the Court held an evidentiary hearing regarding disputed sentencing issues. Petitioner thus has established no grounds for relief based on Fatico because the Court conducted evidentiary hearings on all disputed issues.

---

[4] Although Petitioner now avers "that he disagreed with this document, i.e., 'the [F]actual [B]asis' . . . [and] was parroting responsive answers as his counsel advised him" (Docket Entry 47 at 20), Petitioner has failed to show extraordinary circumstances warranting deviation from the rule that "a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the [defendant's] sworn statements [in a plea colloquy]," Lemaster, 403 F.3d at 222. Moreover, to the extent Petitioner contends his counsel should have objected to the Factual Basis to prevent "the government's counsel [from] succeed[ing] in utilizing unindicted state cirmes [sic] to prejduced [sic] [Petitioner's] sentencing hearing to expose [him] to a greater degree of sentencing punishment enhancements" (Docket Entry 47 at 20; see also id. at 26 ("Counsel should have moved accordingly to Fed. R. Crim. P. [sic] Rules 403 & 404(b) intrinsic and extrinsic acts to suppress such highly prejudicial evidence from controlling the factual basis for the Change of Plea . . . .")), Petitioner cannot show prejudice (as required by Strickland) because (as documented above) the Court determined his advisory Guidelines range not based on the content of the Factual Basis, but rather based on the Presentence Report and the sentencing hearing evidence.

13

Finally, Petitioner's Memorandum of Law in Support of Ground One of his Section 2255 Motion contends that the Court violated his due process rights under the Fifth Amendment and his jury trial rights under the Sixth Amendment by considering, for purposes of sentencing him on a felon-in-possession-of-ammunition charge, related offense conduct as to which he received no conviction in state court. (See Docket Entry 47 at 11-12.) Further, according to Petitioner, his "[c]ounsel sat by idle as a colorable speedy trial without due process was conducted against [Petitioner], very informally, whereas, [this] [C]ourt was the Judge, the Jury and executioner . . . ." (Id. at 12; see also id. at 14 ("For counsel not to object to the usage of non-convicted pending state crimes, nor non-charged federal crimes constituted a serious egregious case of ineffective representation . . . .").)

As an initial matter, the United States correctly has observed in its Response that, "[c]ontrary to Petitioner's assertion, [his] counsel did object to the consideration of any relevant conduct associated with any particular alleged offenses . . . [and] to consideration by [this] [C]ourt that Petitioner was involved in any offense other than the offense of conviction." (Docket Entry 50 at 7-8 (emphasis added) (internal citation and quotation marks omitted) (citing Docket Entry 39 at 5, 43).) More fundamentally, Petitioner's instant "argument is nullified by clear Supreme Court and Fourth Circuit precedent holding that a sentencing court may

14

consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence." United States v. Grubbs, 585 F.3d 793, 798-99 (4th Cir. 2009); see also Oken, 220 F.3d at 269 ("[C]ounsel [i]s not constitutionally ineffective in failing to [take action if] . . . it would have been futile for counsel to have done so . . . .").[5]

In sum, Ground One lacks merit.

Ground Two – Ineffective Assistance of Counsel on Appeal

Ground Two of Petitioner's Section 2255 Motion alleges that he received ineffective assistance, because his "[a]ppellate counsel called [him] guilty on appeal and on cert. review in both briefs, and missed critical proedural [sic] violations of the Federal Rules of Criminal Procedure, that could have been raised, de novo, providing ineffective representation." (Docket Entry 46, ¶ 12.B.) The Court should deny relief on Ground Two.

As an initial matter, any ineffective assistance claim by Petitioner related to certiorari proceedings fails as a matter of law, because "[t]he Supreme Court held in Ross v. Moffitt, 417 U.S. 600, 617 (1974), that a criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari.

---

[5] Nor (despite Petitioner's contrary suggestion (see Docket Entry 47 at 16)) did the absence of any charged conspiracy affect the authority of the Court under the Sentencing Guidelines to hold Petitioner accountable for reasonably foreseeable, jointly undertaken criminal activity related to his offense of conviction. See U.S.S.G. § 1B1.3 cmt. n.2.

15

And where there is no constitutional right to counsel, there cannot be constitutionally ineffective assistance of counsel." Wyatt v. United States, 574 F.3d 455, 459 (7th Cir. 2009) (internal parallel citations omitted); accord Richards v. United States, 406 F. App'x 447, 447 (11th Cir. 2010); Nichols v. United States, 563 F.3d 240, 248-50 (6th Cir. 2009); Steele v. United States, 518 F.3d 986, 988 (8th Cir. 2008); Derman v. United States, 298 F.3d 34, 45 n.7 (1st Cir. 2002); United States v. Thomas, 33 F. App'x 446, 448 (10th Cir. 2002); see also Austin v. United States, 513 U.S. 5, 8 (1994) ("[T]hough indigent defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney, that right does not extend to forums for discretionary review." (internal citation omitted)); United States v. MacDonald, 966 F.2d 854, 859 n.9 (4th Cir. 1992) ("[W]here no Sixth Amendment right to counsel attaches to the proceeding, an ineffective assistance claim cannot be sustained.").

Petitioner's challenge as to his direct appeal similarly falls short. In that regard, Petitioner apparently contends his counsel should have appealed the Court's application of the cross-reference to the kidnapping guideline based on the absence of a conviction in state court for such conduct. (See Docket Entry 47 at 32-33 (complaining that "[d]irect appeal attorney incorporated the state pending allegations . . . in teh [sic] direct appeal brief . . . [and] had in his mind that [Petitioner] was guilty of the state

16

pending crimes, although, they were pending in state court and eventually nolle prosequied"); Docket Entry 53 at 3 ("[N]o reasonable counsel would concede that his client was guilty of anything, if the allegations were not plead to by their [sic] client of [sic] proven by a jury of their [sic] client [sic] peers. . . . [W]hen [Petitioner's] attorney presented his case on appeal . . ., [] he knew that in fact, the State of North Carolina had dismissed the case against he [sic] client.").)

As discussed in connection with Ground One, that argument could not have succeeded in light of "clear Supreme Court and Fourth Circuit precedent holding that a sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence," Grubbs, 585 F.3d at 798-99. "Appellate counsel [is] not ineffective for failing to raise [an issue] on appeal [that] is plainly without merit." Carter v. Lee, No. 99-10, 202 F.3d 257 (table), 1999 WL 1267353, at *11 (4th Cir. Dec. 29, 1999) (unpublished); see also Oken, 220 F.3d at 269 ("[C]ounsel [i]s not constitutionally ineffective in failing to [take action if] . . . it would have been futile for counsel to have done so . . . .").[6]

---

[6] Petitioner has provided no support for his bald assertion that his appellate counsel "missed critical proedural [sic] violations of the Federal Rules of Criminal Procedure, that could have been raised, de novo, providing ineffective representation" (Docket Entry 46, ¶ 12.B.). (See id.; Docket Entry 47 at 32-33;
(continued...)

17

Accordingly, Ground Two fails as a matter of law.

CONCLUSION

Petitioner has established no entitlement to relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 46) be denied without a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 11, 2015

---

⁶(...continued)
Docket Entry 53 at 1-4.) Any such claim thus is "vague, conclusory, speculative, and unsupported and fails for all of these reasons." Cabrera v. United States, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, C.J.); see also United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (internal quotation marks omitted)).